UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

COMCAST OF ILLINOIS X, LLC, )
an Illinois Limited Liability Company, )
)
Plaintiff, )
)
vs. ) 05 C 5363
)
DENNIS TOGUCHI, individually, )
)
Defendant. )

# MEMORANDUM OPINION

CHARLES P. KOCORAS, District Judge:

This matter comes before this court on motion for summary judgment by Defendant Comcast of Illinois X, LLC ("Comcast"). For the following reasons, Comcast's motion is denied without prejudice.

## BACKGROUND

Comcast owns and operates a cable television system in Illinois. To access Comcast's cable programming, subscribers buy a "package" of services that corresponds to particular channels and programs. To prevent theft of its transmissions, Comcast scrambles the electronic signals it sends out over the cable. Comcast then "authorizes" its subscribers' converters to decode the scrambled signals so that subscribers can view the specific programming for which they have paid. Individuals

who install unauthorized or "pirate" converters/descrambling devices, however, can access Comcast's cable transmissions without payment to Comcast.

Comcast alleges that Defendant Dennis Toguchi has done precisely that. On or about November 29, 2001, Toguchi bought a VM Boss VII unit (the "Boss VII") from Modern Electronics, Inc. According to the affidavit of Richard Killian, a Comcast security investigator, the Boss VII is a "known illegal cable scrambling device designed specifically for the purpose of intercepting, receiving, and exhibiting" Comcast's programming without authorization. Killian states that Toguchi intercepted Comcast's programming with the Boss VII and distributed Boss VIIs to three other individuals so that each of those individuals could intercept Comcast's programming. Killian also asserts that Toguchi knew his actions were illegal because he was neither authorized to receive the specific programming nor did he inform Comcast of his purchase of the Boss VII.

Comcast contends that Toguchi's actions violated Section 553(a) of the Cable Communications Act, 47 U.S.C. § 553(a), and 720 ILCS 5/16-18. Comcast seeks actual damages, statutory damages, and attorneys' fees and costs as permitted by statute.

Toguchi counters that he was not aware that the Boss VII was illegal and had no reason to suspect it was illegal because it was advertised in national magazines.

Although he admits to purchasing the units, he explains that he did not notify Comcast of his purchase because Comcast was not in existence at that time and he was unaware of any notification requirement. Further, he states that Comcast never provided cable service at the address at which Comcast claims he intercepted their cable services. While he admits to distributing the Boss VII units to three other individuals, he denies that he did so with an intent to facilitate illegal activity. In his sworn affidavit, Toguchi admits he purchased the Boss VII, but says that it was unsatisfactory and did not work. He says that he never used the Boss VII unit to receive, show, or tape cable signals.

An examination of the record yields additional information. Toguchi states, in his responses to Comcast's interrogatories, that he purchased the initial Boss VII unit for a friend, John, who did not have a credit card. When that unit malfunctioned, Toguchi returned the unit to Modern Electronics. Modern Electronics offered him a replacement unit at full price and the opportunity to order two more boxes at half price. Toguchi claims he sold one unit to John at cost, sold one to another friend, also at cost, and gave the remaining unit away to a third friend. He claimed that he didn't keep the boxes for more than a few days. Toguchi admits to writing at least two letters to the technical department at Modern Electronics, complaining about one Boss VII unit that did not work. In one letter, he explained that [sic] "about a month ago I ordered one unit for myself and three more unit the following week to get a discount on two unit.

I sold all three unit to my friends. Two was pleased. I'm very satisfied but the last unit the friend bought said it don't work." In another complaint to Modern Electronics, he stated that his unit worked, although his friend's unit did not. In his responses to Comcast's requests to admit, Toguchi denies keeping any of the units, stating instead that he gave away or sold at his cost every Boss VII unit he purchased.

## LEGAL STANDARD

Summary judgment is appropriate only when "the pleadings, depositions, answers to interrogatories, admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact by specific citation to the record, at which time the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine issue of fact for trial. Fed. R. Civ. P. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). At summary judgment, we construe all facts and draw all inferences from the record in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

## DISCUSSION

Comcast contends that Toguchi's actions violate § 553(a)(1) of the Cable Communications Act, which prohibits any person from "intercept[ing], receiv[ing], or

assist[ing] in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law." Under §553(a)(2), "assisting" also includes the "distribution of equipment intended by the manufacturer or distributor...for unauthorized reception of any communications service offered over a cable system in violation of § 553(a)(1)." Section § 553(c) authorizes any person aggrieved by a violation of § 553(a) to bring a civil action in federal court to recover actual and statutory damages.

Comcast relies on the allegations contained within its complaint as well as the legal and factual conclusions drawn in Killian's affidavit to support its contention that Toguchi violated § 553(a). Toguchi has objected to the use of both of these documents as evidence at this stage of proceedings and has filed a sworn affidavit denying many of the key allegations contained in Killian's affidavit. Comcast stands on its motion, asserting that Fed. R. Civ. P. 56(c) permits us to consider the pleadings and that Killian's affidavit is proper because it was made upon personal knowledge as required by Fed. R. Civ. P. 56(e). Finally, Comcast states that "almost every citation by Plaintiff to its Original Complaint is also supported either by citation to Defendant's own admissions by way of his Answer or response to interrogatories and requests for production and requests to admit."

Comcast's presentation of the material facts at issue in its motion for summary judgment is insufficient to permit us to rule on the motion. First, Comcast relies on the allegations of its complaint to establish the majority of its material facts. While Fed. R. Civ. P. 56(c) does permit a court to consider the pleadings in evaluating a motion for summary judgment, a party may not rest on his pleadings and must instead offer affirmative evidence of its contentions. *Celotex*, 477 U.S. at 324; *Hemsworth v. Quotesmith.Com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007).

Second, Comcast provides no legal authority to support the proposition that mere possession of the Boss VII implies that Comcast's programming was in fact intercepted, or that mere distribution of the Boss VII implies that such distribution was done with the intent to facilitate unauthorized interception of its programming. Instead, Comcast relies on Killian's affidavit to support its contentions that the Boss VII is an illegal unit designed for no other purpose than to intercept Comcast's programming, that Toguchi intercepted Comcast's programming, and that Toguchi, when distributing units to other individuals, did so knowing that the other individuals would use the units to intercept Comcast's programming. While Killian did attest that his affidavit was based upon personal knowledge, Fed. R. Civ. P. 56(e) requires more than this simple attestation. Instead, affidavits must also "set forth such facts as would be admissible in evidence, and...show affirmatively that the affiant is competent to testify to the

matters stated therein." Furthermore, Killian offers no support for the factual assertions he makes in the affidavit and no foundation to establish his ability to testify as to the legal conclusions he has drawn. Instead, he simply states that he is a security investigator for Comcast. There is no indication as to how he could have obtained personal knowledge of Toguchi's activities. As Killian's affidavit lacks foundation and is not admissible as evidence, we cannot consider it on summary judgment. *Cooper-Schut v. Visteon Automotive Systems*, 361 F.3d 421, 429 (7th Cir. 2004); *Drake v. Minnesota Min. & Mfg. Co.*, 134 F.3d 878, 887 (7th Cir. 1998) (affidavits cannot rely on bare allegations, but must contain "specific concrete facts establishing the existence of the truth of the matter asserted."); *Pfeil v. Rogers*, 757 F.2d 850, 862 (7th Cir. 1985) (legal argument contained in an affidavit is not a "fact" and may be disregarded).

Finally, while Comcast asserts that "almost every" one of the material facts alleged in its Local Rule 56.1 statement is also supported by evidence in the record, Comcast does so without specific citation. Comcast has not fulfilled its obligation to identify specific portions of the record and the legal authority to justify the entry of summary judgment in its favor. *Celotex*, 477 U.S. at 323.

**CONCLUSION**

For the foregoing reasons, Comcast's motion for summary judgment is denied without prejudice to representment of its motion and any supporting materials satisfying the deficiencies addressed.

/s/ Charles P. Kocoras
Charles P. Kocoras
United States District Judge

Dated:   June 27, 2007