UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| COMCAST OF ILLINOIS X, LLC, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 05 C 5363 |
| | ) | |
| DENNIS TOGUCHI, individually, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

CHARLES P. KOCORAS, District Judge:

This matter comes before this court on a motion for summary judgment by Plaintiff Comcast of Illinois X, LLC ("Comcast"). For the following reasons, Comcast's motion is granted.

## BACKGROUND

Comcast owns and operates a cable television system in Illinois. To access Comcast's cable programming, subscribers buy a "package" of services that corresponds to particular channels and programs. To prevent theft of its transmissions, Comcast scrambles the electronic signals it sends out over the cable. Comcast then "authorizes" its subscribers' converters to decode the scrambled signals so that subscribers can view the specific programming for which they have paid.

Individuals who install unauthorized or "pirate" converters/descrambling devices, however, are able to access Comcast's cable transmissions without payment to Comcast.

Pursuant to a Court Order dated September 17, 2002, Richard Killian, Comcast's Manager of Security, along with other Comcast employees and U.S. Marshals entered Modern Electronics, Inc. ("Modern Electronics") and recovered business records indicating that in November 2001 Defendant Dennis Toguchi purchased a VM Boss VII unit (the "Boss VII"). According to Killian, the Boss VII is a device that is capable of intercepting, receiving and/or exhibiting all of Comcast's programming without Comcast's authorization or knowledge.

Among the records seized from Modern Electronics were return/exchange forms filled out by Toguchi. In one such form, Toguchi wrote:

> Enclosed is Boss VII 4000 + series unit...about a month ago I ordered 1 unit for myself + 3 more unit the following week to get a discount on two unit I sold all three unit to my friends...I'm very satisfied but the last unit the friend bought said it don't work I tried to find out whats wrong at his place couldn't get a response.

In another such letter dated March 13, 2002, Toguchi wrote:

> I bought a few cable box units and was very satisfied and the people I know...The problem is there's no sound and the picture jitters not stabled on memory two otherwise without the memory the picture is very clear no snow. One of my f[riends] ask me if I had an extra unit. I did.

An examination of Toguchi's responses to Comcast's requests to admit yields additional information regarding Toguchi's letters to the return Department at Modern Electronics. First, Toguchi admits that he wrote the abovementioned letters to Modern Electronics. He also admits that he ordered a Boss VII unit from Modern Electronics on November 29, 2001. He acknowledges that in December 2001, he contacted Modern Electronics and advised them "that he had a device that was abused [and]...agreed to purchase 3 additional boxes at a reduced price including an extended warranty." In his responses to Comcast's request to admit, Toguchi disclosed that he returned a Boss VII to Modern Electronics on or about January 22, 2002, and received a replacement device at some later date which he forwarded to his friend. Toguchi is also forthcoming that on or about March 18, 2002, he returned another Boss VII to Modern Electronics and received a replacement unit on or about March 20, 2002.

Although Toguchi admits to purchasing Boss VIIs from Modern Electronics, he maintains that he was unaware that Boss VIIs were illegal and had no reason to suspect they were illegal because they were advertised in national magazines at the time. In his sworn affidavit, Toguchi states that he "never used the VM Boss VII device at issue in this case to receive cable signals, premium or otherwise, from the Plaintiff" and that he does not know anyone who has or uses such a device. He

explains that he "found the VM Boss VII devices [he] obtained from Modern Electronics to be unsatisfactory and unable to deliver the results the Plaintiff claims; vis A vis. Reception of premium channels, pay per view, et al."

Comcast contends that Toguchi's purchase, use, and sale of Boss VIIs violated § 553(a) of the Cable Communications Act. 47 U.S.C. § 553(a). Comcast seeks actual damages, statutory damages, and attorneys' fees and costs as permitted by statute.

## LEGAL STANDARD

Summary judgment is appropriate only when "the pleadings, depositions, answers to interrogatories, admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact by specific citation to the record, at which time the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine issue of fact for trial. Fed. R. Civ. P. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). At summary judgment, we construe all facts and draw all inferences from the record in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

# DISCUSSION

Comcast argues that summary judgment in its favor is appropriate here and that no genuine issue of material fact exists. In support of its position, Comcast insists that any issue of fact that exists was created by Toguchi's affidavit. The Seventh Circuit has held that "self-serving affidavits without factual support in the record will not defeat a motion for summary judgment." *Patterson v. Chicago Ass'n for Retarded Citizens*, 150 F.3d 719, 724 (7th Cir. 1998) *citing Slowiak v. Land O'Lakes, Inc.*, 987 F.2d 1293, 1295 (7th Cir. 1993). "'A party should not be allowed to create issues of credibility by contradicting his own earlier testimony.'" *U.S. for and on Behalf of Small Business Admin. v. Torres*, 142 F.3d 962, 967 (7th Cir. 1998) *citing Essick v. Yellow Freight Systems, Inc.*, 965 F.2d 334, 335 (7th Cir. 1992). It is appropriate for a court to disregard an affidavit that is devoid of any factual basis from the record. *Mach Mold Inc. v. Clover Associates, Inc.*, 383 F. Supp. 2d 1015, 1027 (N.D. Ill. 2005).

In the instant matter, the record does not support Toguchi's affidavit which states that he never used the Boss VII device and does not know of anyone who has ever used such a device. To the contrary, the record reflects that Toguchi used a Boss VII for himself, which he was very satisfied with, and sold at least three Boss VIIs to friends with the knowledge that they too would use them to descramble cable.

Toguchi's affidavit also contradicts his discovery responses wherein he admits to using and distributing the Boss VIIs he purchased. In one of his letters to Modern Electronics' technical department, Toguchi explains that he had personally tried to set up his friends' Boss VIIs, but that he was unable to get it to operate properly despite following the instructions. Toguchi's actions in assisting his friends with their Boss VIIs and exchanging their abused devices for new devices at Modern Electronics is clear proof that Toguchi does in fact know individuals who use Boss VIIs. Allowing Toguchi's affidavit to stand as part of the record would therefore be inappropriate. As such, we will disregard it. Consequently, it is abundantly clear that no genuine issue of material fact exists that Toguchi used and sold Boss VIIs in violation of § 553(a) of the Cable Communications Act. 47 U.S.C. § 553(a).

## CONCLUSION

For the foregoing reasons, Comcast's motion for summary judgment is granted.

*Charles P. Kocoras*
Charles P. Kocoras
United States District Judge

Dated:   December 21, 2007