UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| COMCAST OF ILLINOIS X, LLC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 05 C 5363 |
| | ) | |
| DENNIS TOGUCHI, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

CHARLES P. KOCORAS, District Judge:

This matter is before us on both Defendant Dennis Toguchi ("Toguchi")'s motion to alter or amend this court's summary judgment ruling in favor of Plaintiff Comcast of Illinois X, LLC ("Comcast") and Plaintiff's motion for judgment. For the reasons set forth below, Toguchi's motion is denied and Comcast's motion is granted.

## BACKGROUND

Comcast filed suit against Toguchi in September 2005 alleging that he had violated the Cable Communications Act (the "Act"), 47 U.S.C. § 553(a), and several Illinois state statutes. Comcast later voluntarily dismissed the state counts against Toguchi and filed a motion for summary judgment. In June 2007, we denied

Comcast's motion for summary judgment for three reasons: 1) Comcast's presentation of the material facts at issue were insufficient to permit us to decide the motion; 2) Comcast provided no legal authority to support its proposition that mere possession of a Boss VII[1] implies that Comcast's programming was in fact intercepted or that mere distribution of the Boss VII implies that such distribution was done with the intent to facilitate unauthorized interception of its programming; and 3) Comcast's allegations in its Local Rule 56.1 statement were not properly supported by the record.

Comcast subsequently remedied the deficiencies in its original motion for summary judgment and filed a new motion for summary judgment in August 2007. In an effort to defeat Comcast's second motion for summary judgment, Toguchi cited his self-serving affidavit to show that an issue of fact existed. The Seventh Circuit has held that "self-serving affidavits without factual support in the record will not defeat a motion for summary judgment." *Patterson v. Chicago Ass'n for Retarded Citizens*, 150 F.3d 719, 724 (7th Cir. 1998) *citing Slowiak v. Land O'Lakes, Inc.*, 987 F.2d 1293, 1295 (7th Cir. 1993). No facts in the record existed to support Toguchi's affidavit, so it was stricken from the record. Subsequently, we entered summary

---

[1] A Boss VII is a device that is capable of intercepting, receiving and/or exhibiting all of Comcast's programming without Comcast's authorization or knowledge.

judgment in Comcast's favor and found that Toguchi had personally used a Boss VII and had sold at least three Boss VII's in violation of § 553(a).

Within the time permitted by Fed. R. Civ. P. 59, Toguchi moved to alter or amend our judgment contending: 1) that we should have found that he had no reason to believe that his acts constituted a violation of § 553(a); 2) that we violated the "law of the case" doctrine by allowing Comcast to file a second motion for summary judgment; 3) that Comcast's August 2007 motion for summary judgment failed to correct the deficiencies found in its initial motion; and 4) that it was an abuse to strike his entire affidavit.

In response, Comcast filed a motion for judgment against Toguchi seeking statutory damages pursuant to § 553(c)(3)(A)(ii) in the amount of $40,000 and attorneys' fees and costs pursuant to § 553(c)(2)(C) in the amount of $15,043.50, for a total judgment of $55,043.50.

**I. Toguchi's Motion to Alter or Amend Judgment Pursuant to Rule 59(e)**

*A. Legal Standard*

Rule 59(e) motions to alter or amend a judgment "must clearly establish either a manifest error of law or fact or must present newly discovered evidence." *LB Credit Corp. v. Resolution Trust Corp.*, 49 F.3d 1263, 1267 (7th Cir. 1995). The losing party's disappointment does not create a "manifest error." *Oto v. Metro Life Ins. Co.*,

224 F.3d 601, 606 (7th Cir. 2000). A manifest error is demonstrated by a court's "wholesale disregard, misapplication, or failure to recognize controlling precedent." *Oto*, 224 F.3d at 606. A Rule 59(e) motion "does not allow a party to introduce new evidence or advance arguments that could or should have been presented to the district court prior to the judgment." *Popovits v. Circuit City Stores*, 185 F.3d 726, 730 (7th Cir. 1999).

*B.    Discussion*

All four of Toguchi's arguments fail to meet the requirements of Rule 59. His first argument, that he had no reason to believe that his acts violated § 553(a), fails because it is identical to one that he made in his response to Comcast's motion for summary judgment and it is not proper to present previously litigated arguments in a Rule 59 motion. *Holden v. Deloitte and Touche*, 390 F.Supp.2d 752, 757 (N.D. Ill. 2005). *Popovits*, 185 F.3d at 730. Toguchi's second and third arguments, that we did not follow the "law of the case" doctrine and that Comcast's August 2007 summary judgment motion was deficient, fail because they could or should have been presented to us before our December 2007 ruling. *Id.* Toguchi's final argument consists of one sentence in which he states that it was an abuse to strike the entirety of his affidavit. Such a conclusory assertion does not establish that we made a manifest error of law

or fact by striking his affidavit. Consequently, this last argument does not warrant relief under Rule 59(e). *LB Credit Corp.*, 49 F.3d at 1267.

**II.     Comcast's Motion for Judgment**

*A.     Legal Standard*

Once a court has determined that a defendant has violated § 553, it has the power to award actual or statutory damages in any amount between $250 and $10,000 and enhanced damages of up to $50,000 if it "finds that the violation was committed wilfully and for purposes of commercial advantage or private financial gain." § 553(c)(3)(A) and (B).

Having already determined that Toguchi violated § 553(a)(1), we will now assess the proper amount of damages he must pay Comcast.

*B.     Discussion*

Comcast suggests a damage award of $50,043.50 against Toguchi. More specifically, Comcast argues that Toguchi should pay statutory damages in the amount of $40,000; $10,000 pursuant to 47 U.S.C. § 605, for his individual use of a Boss VII, $30,000 pursuant to § 553(c)(3)(A)(ii) for distributing three Boss VIIs to others, and $15,043.50 pursuant to § 553(c)(2)(C) for the fees and costs Comcast spent in pursuing this matter against Toguchi.

### 1. Statutory Damages

As previously mentioned, § 553(c)(3)(A) allows a court to award actual or statutory damages. In this case, Comcast has requested a statutory award of $10,000 for each Boss VII Toguchi purchased. Comcast cites *Community Television Systems, Inc. v. Caruso*, 284 F.3d 430 (2nd Cir. 2002), to support its position that such a statutory award is proper.

In *Caruso*, the plaintiff, a cable operator, "alleged that the defendants purchased descramblers and used, or assisted others in using, those devices in violation of 47 U.S.C. §§ 553 and 605." *Caruso*, 284 F.3d at 434.

Section 553(a)(1) provides that:

> [n]o person shall intercept or receive or assist in intercepting or receiving any communications service offered over a *cable* system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law.

(emphasis added).

In contrast, § 605(a) provides that

> No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by *radio* and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto.

(emphasis added).

Despite the fact that the defendants in *Caruso* had received *cable* communications (§ 553) and not *radio* communications (§ 605), the Second Circuit affirmed the

district court's fee assessment of $10,000 against each defendant for his purchase of a cable decoder pursuant to § 605(e)(3)(C)(i)(II).

Section 605(e)(3)(C)(i)(II) provides:

> the party aggrieved may recover an award of statutory damages for each violation of subsection (a) of this section involved in the action in a sum of not less than $1,000 or more than $10,000, as the court considers just...

We are not persuaded by Comcast's assertion that *Caruso* should apply in the present case. First, unlike the plaintiff in *Caruso*, Comcast never alleged that Toguchi's actions violated § 605. Secondly, as we have already alluded, § 553 and § 605 address two separate and distinct media. As the Seventh Circuit held in *U.S. v. Norris*, 88 F.3d 462, 469 (7th Cir. 1996), "cable television programming transmitted over a cable network is not a 'radio communication'...and thus its unlawful interception must be prosecuted under § 553(a) and not § 605." Consequently, it is appropriate that we look only to § 553, and not § 605, to determine the proper level of damages to assess against Toguchi for his personal use of a Boss VII.

Comcast cites no other cases in support of a statutory award in its favor. Section 553(a)(3)(A)(ii) gives the court full discretion to determine the proper amount of statutory damages to award: "the party aggrieved may recover an award of

statutory damages for all violations involved in the action, in a sum of not less than $250 or more than $10,000 *as the court considers just*." (emphasis added). Courts in the past have struggled with what criteria to use in determining a statutory damage award, often awarding an arbitrary sum without providing much reasoning to support it. *See, e.g. Century ML-Cable Corp. v. Diaz*, 39 F.Supp.2d 121, 125 (D.Mass. 2005) (where the court reasoned that $10,000 in damages for each of the 750 violations was a "just figure"); *TCI Cablevision of New England v. Pier House Inn, Inc.*, 930 F.Supp. 727, 737 (awarding $5,000 in statutory damages for a violation of § 553); *Cablevision Sys. Corp. v. Muneyyirici*, 876 F.Supp. 415 (E.D.N.Y. 1994) (awarding the statutory minimum per sale for 390 violations).

Other courts have awarded statutory damages close to the amount of the plaintiff's actual damages. In *Comcast of Massachusetts I, Inc. v. Naranjo*, 303 F.Supp.2d 43, 47 (D.Mass. 2004), for example, the court refused to consider a plaintiff's proposed factor-based calculation and concluded that statutory damages should be "as reasonable an estimate of actual damages as the facts...allow." Such a conclusion does not take into consideration the fact that § 553 has two separate sections from which a court may grant compensatory damages; the first of which is § 553(a)(3)(A)(i), which specifically allows an aggrieved party to recover the <u>actual</u>

damages it suffered and § 553(a)(3)(A)(ii), which allows the aggrieved party to recover <u>statutory</u> damages as the court finds just.

A plain reading of the statute demonstrates Congress's clear intent to provide courts with two different methods in which to calculate and award compensatory damages. It is our duty to enforce § 553 as it was written and not to change its meaning by adopting a different construction. *Bate Refrigerating Co. v. Sulzberger*, 157 U.S. 1, 33 (1895). As such, we will neither adopt the court's reasoning in *Naranjo*, nor attempt to determine the actual amount of damages suffered by Comcast as a result of Toguchi's purchases.

Instead, we will conduct a fact specific analysis of the extent of Toguchi's violation of § 553 to determine the proper statutory damage amount to award Comcast. Though Toguchi has maintained throughout this litigation that he was not aware and had no reason to believe that using a Boss VII violated the Act, the facts indicate otherwise. Before Toguchi made his first Boss VII purchase, a salesperson from Modern Electronics, Inc. ("Modern Electronics") informed him of its exclusive purpose and use. After becoming satisfied with this initial unit, Toguchi made three subsequent purchases. When he was not satisfied with the quality of one of the Boss VIIs he purchased, he returned to Modern Electronics to obtain a replacement device. On record are several return/exchange forms Toguchi filled out where he explains his

dissatisfaction with the particular Boss VII he sought to return. His understanding of the Boss VIIs purpose and use and his multiple purchases and exchange/return history show that Toguchi had reason to know that using such a device violated § 553. These facts are important in assessing a just statutory award because they demonstrate the extent of Toguchi's use of the Boss VIIs he purchased; not only did Toguchi use a Boss VII but he also assisted others in using it.

Also relevant to the question of statutory damages is that nothing in the record shows that Toguchi profited from the Boss VIIs he sold to his friends. Such information demonstrates that Toguchi did not make a business of selling Boss VIIs, but rather purchased these devices so that he and a few friends could reap the benefits of the illegal device. While such acts violate § 553, they do not warrant the maximum statutory damage amount Comcast requested. Instead, we believe that justice would be served by a statutory award towards the lower end of the spectrum. We therefore award Comcast $4,000 in statutory damages for Toguchi's violation of § 553.

### 2. Enhanced Damages

In addition to compensatory damages, § 553(c)(3)(B) allows us to award a plaintiff enhanced damages of up to an additional $50,000 if we find that "the violation was committed willfully <u>and</u> for purposes of commercial advantage <u>or</u>

private financial gain." (emphasis added). Comcast has not alleged any commercial advantage, so our discussion will focus only on willfulness and private financial gain.

The Act does not define willfulness; however, the Supreme Court in *Transworld Airlines, Inc. v. Thurston*, 469 U.S. 111, 126-27 (1985), defined willfulness as "disregard for the governing statute and an indifference for its requirements." Courts have found the singular "act of purchasing and installing an unauthorized descrambling device" sufficient to demonstrate "willfulness" under § 553(b). *Burdulis*, 367 F. Supp. 2d at 16 (D. Mass. 2005). As one court pointed out, cable "signals do not descramble spontaneously, nor do television sets connect themselves to cable distribution systems." *Time Warner Cable of New York city v. Googies Luncheonette, Inc.*, 77 F. Supp. 2d 485, 490 (S.D.N.Y. 1999).

The facts mentioned above make clear that Toguchi purchased and installed one Boss VII; thereby, establishing his wilfulness.

As with wilfulness, the Act does not provide a definition of the phrase "private financial gain." However, courts have found that "the use of a descrambler for home viewing of cable television programs is ordinarily sufficient to demonstrate that the act was committed for purposes of 'private financial gain,'" *Burdulis*, 367 F. Supp. 2d 16, 19 (D. Mass. 2005); the "private financial gain" being the defendant's savings in cable. *Cablevision Systems New York City Corp. v. Lokshin*, 980 F.Supp. 107,112

(E.D.N.Y 1997). In light of the fact that Toguchi did not pay Comcast for the cable services he obtained by using a Boss VII, we find that he obtained a private financial gain with regard to that one unit.

However, because Comcast has not provided any evidence that Toguchi received any compensation for the Boss VIIs he sold to his friends, we do not believe that he received any private financial gain from the other three Boss VIIs he purchased. *See Burdulis*, 367 F. Supp. 2d at 114 (where the court explained that no private financial gain results when an individual does not receive compensation for his assistance or installation of anothers's descrambler). As such, unlike our discussion regarding statutory damages where we considered all four of the Boss VIIs to be separate violations of § 553(c)(3)(a)(ii), our consideration of an appropriate enhanced damage award under § 553(b)(2) will only include the one instance where Toguchi obtained financial gain, i.e. his personal use of a Boss VII.

There is a common trend among courts to award low enhanced damages for single violations. *See Burdulis*, 367 F. Supp. 2d at 33 ($1,000); *See also Kingvision Pay-Per-View, Ltd. v. Recio*, 2003 WL 21383826 *5 ($2,000); *See also Entertainment by J&J, Inc. v. Nina's Rest. & Catering*, 2002 WL 1000286 at *3 ($2,500); *See further Joe Hand Promotions, Inc. v. Pete*, 1999 WL 638215 *2 (N.D.Cal. 1999)

($5,000). We see no reason to stray from this common trend and will therefore assess Toguchi $1,000.00 in enhanced damages for his single violation of § 553(b)(2).

    4.    Costs

Section 553(c)(2)(C) authorizes the court to also award attorneys' fees to an aggrieved party who prevails. In this case, Comcast requests $295 for the costs of the filing fee and deputy sheriff's fee for service of the summons and complaint, as set forth in an attached affidavit. As the prevailing aggrieved party, Comcast will be awarded costs against Toguchi in the amount of $295.

    5.    Attorneys' Fees

The availability of fee-shifting in § 553(c)(2)(C) allows a court to award attorneys' fees in part due to the "burden borne by cable operators to protect and redress their statutory rights through civil actions from what is also criminal conduct." *Diaz*, 39 F. Supp. 2d at 125. As the party seeking fees, Comcast has the burden to establish the reasonableness of the hours worked and the rate claimed. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). Once the party seeking fees has provided evidence to support its request, the burden then shifts to the party opposing the award to show that the rate should be lowered. *Stark v. PPM America, Inc.*, 354 F.3d 666, 675 (7th Cir. 2004).

It is proper to calculate attorneys' fees by "multiplying the number of hours reasonably expended on the litigation times a reasonably hourly rate." *Dunning v. Simmons Airlines, Inc.*, 62 F.3d 863, 872 (7th Cir. 1995). A reasonable hourly rate can be deduced by looking at the market rate. *People Who Care v. Rockford Bd. of Educ.*, 90 F.3d 1307, 1310 (7th Cir. 1996). The Seventh Circuit has previously explained "that the best evidence of the market value of legal services is what people will pay for it." *Balcor Real Estate Holdings, Inc. v. Walentas Phoenix Corp.*, 73 F.3d 150 (7th Cir. 1996).

In this case, Comcast provided an affidavit detailing the date, time, and legal work each of its three attorneys performed for this case as well as each attorney's respective hourly rate. Toguchi has not set forth any argument in opposition. As such, we conclude that the hourly rates submitted by Comcast are reasonable and will apply those rates in determining the amount of attorneys' fees to award.

With the exception of the hours Comcast billed for its preparation and work on its original motion for summary judgment that was denied, we find reasonable the number of hours Comcast expended on litigating this matter. Accordingly, attorneys' fees will be awarded against Toguchi in the amount of $10,373[2].

---

[2] $11,797.50 (Total Attorneys' Fees) -$1,424.50 (Total Fees For Comcast's first Summary Judgment Motion).

## CONCLUSION

For the aforementioned reasons, Toguchi's to alter or amend judgment motion is denied and Comcast's motion for judgment is granted. Comcast is awarded $5,000 in damages and $10,373 in costs and attorneys' fees, for a total judgment of $15,373.

/s/ Charles P. Kocoras
Charles P. Kocoras
United States District Judge

Dated:   February 11, 2008